**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Alpha Property & Casualty Insurance Company, | No. CV-19-05660-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Freedom Movers LLC, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Alpha Property & Casualty Insurance Company's ("Alpha") motion for service by publication and request for extension of time to serve Defendant Robert Tyler.  (Doc. 14.)  For the following reasons, the motion for service by publication will be denied and the request to extend time for service will be granted.

## BACKGROUND

In this declaratory judgment action, Alpha seeks confirmation that it has no duty to defend or indemnify in a lawsuit that is currently pending in Illinois state court.  The underlying lawsuit arises from an April 2017 car accident.  (Doc. 10 ¶¶ 13-14.)  Tommy Sawdon was a passenger in a vehicle owned by Defendant Freedom Movers, LLC ("Freedom Movers") and driven by Defendant James Vaughn.  (*Id*. ¶¶ 12-13.)  Sawdon alleges that Vaughn negligently caused the accident when he crossed the center median and collided with another vehicle.  (*Id*. ¶ 14.)  Sawdon further alleges that Tyler negligently entrusted the vehicle to Vaughn.  (*Id*. ¶ 17.)  Vaughn and Tyler are the only members of

Freedom Movers and all three defendants are domiciled in Arizona. (*Id.* ¶¶ 6, 8.) Alpha issued an insurance policy to Freedom Movers and filed this lawsuit to obtain a declaratory judgment that it has no duty to defend or indemnify Freedom Movers, Vaughn, or Tyler. (*Id.* at 10-11; Doc. 1.)

On November 20, 2019, Alpha initiated this lawsuit by filing a complaint. (Doc. 1.)

On December 6, 2019, Alpha served Vaughn. (Doc. 11.)

On December 12, 2019, Alpha served Freedom Movers. (Doc. 12.)

Alpha has been unsuccessful in its efforts to serve Tyler. (Doc. 14 at 2.) Those efforts include six in-person attempts at two of Tyler's known addresses. (*Id.*) Alpha also mailed four packages to Tyler (two to each address) containing a Notice and Request for Waiver of Service. (*Id.* at 2-3.)

On January 27, 2020, Alpha's investigator tracked Tyler to a business center in Mesa, Arizona. (Doc. 14-6.) When the investigator told the receptionist that she was there to serve legal process on Tyler, the receptionist said there was no such person working there. (*Id.*) Nevertheless, the investigator observed a vehicle registered to Mr. Tyler in the business center's parking lot and eventually observed a man enter the vehicle. (*Id.*) This admitted to the investigator that Tyler had left the business center in an Uber after being tipped off by the receptionist that a process server was looking for him. (*Id.*)

On January 29, 2020, a second attempt to serve Tyler at this business center was met with a refusal to open the door. (*Id.*)

On February 11, 2020, Alpha filed its motion for service by publication and for an extension of time. (Doc. 14.)

I.    Motion For Service By Publication

Alpha has requested that the Court enter an order authorizing service by publication—specifically, by publishing a notice in the "Arizona Capital [sic] Times." (Doc. 14 at 4.)

Rule 4(e) of the Federal Rules of Civil Procedure provides that "an individual . . . may be served in a judicial district of the United States by . . . following state law for

serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Arizona law, in turn, authorizes "Alternative Means of Service," which is addressed in Rule 4.1(k) of the Arizona Rules of Civil Procedure, and "Service by Publication," which is addressed in Rule 4.1(l) of the Arizona Rules of Civil Procedure (but which is also cross-referenced in Rule 4.1(k)(3)).

There is conflicting case law about whether courts applying Arizona law may approve requests to serve by publication. Some Arizona courts (and federal courts applying Arizona law) have concluded that it is impermissible for a party to seek such authorization. *See, e.g., Ritchie v. Salvatore Gatto Partners, L.P.*, 222 P.3d 920, 923 n.4 (Ariz. Ct. App. 2010) (stating that "[t]he decision whether to pursue personal service or service by publication is that of the plaintiff, not the court" and that "the court does not preauthorize service by publication"); *Tunoa v. Corr. Corp. of Am.*, 2013 WL 12327363, *2 (D. Ariz. 2013) ("Because Plaintiff does not need leave of court to serve Dwight by publication, the Court will deny Plaintiff's motion for leave to serve Dwight by publication."). Other courts, however, have suggested that authorization isn't mandatory— which is different from saying that a request for authorization is verboten. *See, e.g., Ruffino v. Lokosky*, 425 P.3d 1108, 1110 & n.1 (Ariz. Ct. App. 2018) (observing that party had filed a "motion request[ing] leave to serve by publication" and clarifying in a footnote that "[n]either the former nor current rule require a party to seek leave of the court before serving by publication"). And still other courts have considered and approved motions for authorization to serve by publication. *See, e.g., Master Fin., Inc. v. Woodburn*, 90 P.3d 1236, 1237 (Ariz. Ct. App. 2004) ("After concluding that personal service was not possible, MFI obtained an order from the trial court authorizing service by publication."); *U.S. Commodity Futures Trading Comm'n v. Weber*, 2010 WL 2473580, *1 (D. Ariz. 2010) ("The Court will grant Plaintiff's motion for an order for publication of process.").

In the Court's view, the best reading of Rules 4.1(k) and 4.1(l) is that it *is* permissible for a party to file a motion seeking authorization to serve by publication. As noted, Rule 4.1(k) governs requests to utilize "alternative means of service." Subdivision

(1) of Rule 4.1(k) provides that if a party shows that other means of service "are impracticable, the court may—on motion and without notice to the person being served— order that service be accomplished in another manner." And subdivision (3) of Rule 4.1(k) identifies "Service by Publication" as once such permissible service method and then clarifies that a "party may serve by publication only if" certain additional requirements are met. The best way to harmonize these provisions is to conclude that service by publication is one of multiple "alternative means of service" available under Arizona law and that judicial approval "may" be sought for any of those alternative service methods if the necessary showing is made "on motion." *Cf. Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretive canons . . . [is] that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (quotation omitted). Finally, although Rule 4.1(l) doesn't say anything about judicial approval, that silence isn't dispositive because Rule 4.1(l) simply sets forth additional requirements—beyond those set forth in Rule 4.1(k)— necessary to achieve effective service by publication.[1]

Nevertheless, on the merits, Alpha's request for authorization to serve by publication will be denied. Even though Alpha has established that Tyler is likely evading service, this doesn't mean that service by publication is appropriate. Under Arizona law, service by publication is permissible "only if" (1) "the person to be served has intentionally avoided service of process" *and* (2) "service by publication is the best possible means practicable in the circumstances for providing the person with notice of the action's commencement." *See* Ariz. R. Civ. P. 4.1(l)(1). Here, Alpha has provided no explanation

---

[1] The Court further notes that *Ritchie* involved a tax lien foreclosure proceeding. Such proceedings are governed in part by A.R.S. § 42-18206, which provides that "if a person who redeems has been served personally or by publication in the action, . . . judgment shall be entered in favor of the plaintiff." Thus, the *Ritchie* court stated that its task was to address "the interaction between § 42-18206 and [what is now Rule 4.1(k)]." *Ritchie*, 222 P.3d at 306. In other words, *Ritchie* involved the interpretation of a unique statute that expressly authorizes parties to choose between personal service and service by publication. Given this backdrop, the footnote in *Ritchie* stating that "[t]he decision whether to pursue personal service or service by publication is that of the plaintiff, not the court," *id.* at 307 n.4, shouldn't necessarily be viewed as a broad statement prohibiting requests for judicial approval for service by publication in other contexts.

for why the *Arizona Capitol Times*—a specialty publication geared toward "[g]overnment and business leaders in Arizona" that is only published once per week and reaches approximately "5,250 readers per issue," *see* https://azcapitoltimes.com/advertising/—is the publication most likely to come to Tyler's attention. Additionally, Alpha's moving papers don't reveal whether its investigator has attempted to discern Tyler's email address, which would likely provide a better pathway to alternative service than publication. *Cf. Ruffino*, 425 P.3d at 1113 ("Even if . . . Lokosky intentionally avoided service, . . . due process impose[s] a requirement that service by publication be the best means practicable to provide notice to the interested party. Given our present society, . . . modern methods of communication, especially email, [are] more likely to give [a service-evading party] notice of a suit than publication in a newspaper distributed in a rural area 70 miles from Lokosky's Scottsdale home."). Finally, it appears that Alpha has now discovered Tyler's true work address (even though he is pretending not to work there), and service upon the receptionist may also qualify as an alternative service method that is more likely to provide actual notice to Tyler than running an ad in the *Arizona Capitol Times*.

II.     Request For Extension Of Time To Serve

Alpha requests an extension of time to serve Tyler. Rule 4(m) of the Federal Rules of Civil Procedure provides that, although a defendant generally must be served within 90 days of when the complaint was filed, "if the plaintiff shows good cause for the failure [to timely serve], the court must extend the time for service to an appropriate period." Additionally, district courts have broad discretion under Rule 4(m) to extend the time for service even in the absence of good cause. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). "[G]ood cause generally means that service has been attempted but not completed, that plaintiff was confused about the requirements of service, or that plaintiff was prevented from serving defendants by factors beyond his control." *Chemehuevi Indian Tribe v. Wilson*, 181 F.R.D. 438, 440 (N.D. Cal. 1998) (quotation omitted). The Ninth Circuit has repeatedly mentioned that a defendant's evasion of service is an "obvious" example of good cause. *See*, *e.g.*, *Fimbres v. United States*, 833 F.2d 138, 139 (9th Cir. 1987); *Wei v.*

*State of Hawaii*, 763 F.2d 370, 371 (9th Cir. 1985).

Here, Alpha has established that Tyler is likely evading service.  Thus, the Court will grant Alpha's request to extend time for service by 90 days.

Accordingly, **IT IS ORDERED** that Alpha's motion (Doc. 14) is **granted in part and denied in part**.  Alpha is not authorized to serve Tyler by publication in the *Arizona Capitol Times*, but Alpha is granted a 90-day extension of time to serve Tyler and shall have until **June 2, 2020**, to complete such service.

Dated this 4th day of March, 2020.

_____
Dominic W. Lanza
United States District Judge