**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alpha Property & Casualty Insurance Company,<br><br>    Plaintiff,<br><br>v.<br><br>Freedom Movers LLC, et al.,<br><br>    Defendants. | No. CV-19-05660-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a motion for default judgment by Plaintiff Alpha Property & Casualty Insurance Company ("Alpha") against Defendants Freedom Movers LLC ("Freedom Movers"), James Vaughn II, and Robert Tyler (collectively, "Defendants"). (Doc. 22.) For the following reasons, the motion will be granted in part and denied in part.

**BACKGROUND**

I.    <u>Factual Background</u>

The following facts are derived from Alpha's second amended complaint ("SAC"), in which Alpha seeks confirmation that it has no duty to defend or indemnify Defendants in a separate lawsuit that is currently pending in Illinois state court. (Doc. 10.)

Alpha issued a commercial vehicle insurance policy to Freedom Movers. (*Id*. ¶ 20.) The policy provides that Alpha "ha[s] no duty to defend any suit or settle any claim for bodily injury or property damage not covered under this policy." (*Id*. ¶ 27.) The policy further provides that "coverage is null, void and no effect [sic] if regular or frequent trips

are made, during the course of business, outside the mileage limitation radius shown for the insured vehicle on the Declarations Page." (*Id*. ¶ 32.) The Declarations Page, in turn, provides that the mileage limitation radius is limited to the State of Arizona. (*Id*. ¶¶ 33, 46.) Alpha alleges that "Freedom Movers regularly and frequently made trips outside of the maximum radius under the Policy during the course of business." (*Id*. ¶ 49.)

On April 10, 2017, Vaughn, while driving a 2011 Ford F-250 van owned by Freedom Movers, crossed the center median and collided with another vehicle. (*Id*. ¶¶ 13-14, 24.) A passenger in the other vehicle, Tommy Sawdon, suffered serious injuries. (*Id*. ¶ 14.) The accident occurred in Illinois. (*Id*. ¶ 13.)

On April 5, 2019, Sawdon filed a complaint against Defendants in Illinois state court. (*Id*. ¶ 12.)

II.     Procedural Background

On November 20, 2019, Alpha initiated this lawsuit by filing a complaint. (Doc. 1.)

On November 22, 2019, Alpha filed a first amended complaint. (Doc. 7.)

On December 9, 2019, Alpha filed the SAC. (Doc. 10.)

On December 30, 2019, Alpha filed proof of service as to Freedom Movers and Vaughn. (Docs. 11, 12.)

On February 11, 2020, Alpha filed a motion for an extension of time to serve Tyler and for permission to serve Tyler by publication. (Doc. 14.)

On March 4, 2020, the Court granted in part and denied in part Alpha's motion. (Doc. 15.) The Court did not authorize Alpha to serve Tyler by publication but did grant Alpha a 90-day extension of time to complete service. (*Id*. at 6.)

On April 14, 2020, Alpha filed two documents entitled "Affidavit of Alternative Service of Process." (Doc. 18, 19.) In the first affidavit, the process server stated that after knocking on the door of Tyler's "last known residence" and receiving no response, he used clear packing tape to attach sealed envelopes containing the summons and SAC to the windshields of two different Mercedes vehicles registered to Tyler. (Doc. 18 at 1-2.) The process server also taped an envelope containing the summons and SAC to the door of

Tyler's apartment. (*Id.* at 2.) In the second affidavit, the process server stated that the SAC was served on the receptionist at Tyler's last known work address. (Doc. 19 at 1-2; *see also* Doc. 14 at 3 [noting the business address is 3707 East Southern Avenue in Mesa, Arizona].) The affidavit further explains that the receptionist informed the process server that Tyler's company "had vacated their office" the week before and that the office was now empty. (*Id.* at 2.) The process server noted that no vehicles registered to Tyler were in the parking lot and that the office in which Tyler previously worked was "dark, unoccupied and the furniture was stacked in the middle of the room." (*Id.* at 1.)

On June 10, 2020, Alpha applied for an entry of default against all Defendants. (Doc. 20.)

On June 11, 2020, the Clerk entered the requested defaults. (Doc. 21.)

On June 29, 2020, Alpha filed its motion for default judgment. (Doc. 22.)

**DISCUSSION**

I.  <u>Failure To Serve Tyler</u>

Federal Rule of Civil Procedure 4(e) provides that "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Arizona Rule of Civil Procedure 4.1(d), in turn, provides that "an individual may be served by . . . (1) delivering a copy of the summons and the pleading being served to that individual personally; (2) leaving a copy of each at that individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." "The term 'agent authorized by appointment' means actual appointment, express or implied, for the purpose of receiving service of process." *Kalakosky v. Collins*, 609 P.2d 596, 597 (Ariz. Ct. App. 1980).

Arizona Rule of Civil Procedure 4.1(k) also authorizes "alternate means of service." Rule 4.1(k)(1) provides that "[i]f a party shows that the means of service provided in Rule 4.1(c) through Rule 4.1(j) are impracticable, the court may—on motion and without notice

to the person to be served—order that service may be accomplished in another manner." Rule 4.1(k)(2) further provides that "[i]f the court allows an alternative means of service, the serving party must make a reasonable effort to provide the person being served with actual notice of the action's commencement. In any event, the serving party must mail the summons, the pleading being served, and any court order authorizing an alternative means of service to the last-known business or residential address of the person being served."

Here, the motion for default judgment provides no explanation or argument as to why Alpha's service attempts on Tyler should be deemed sufficient. Concerning the first service attempt, the envelopes taped to the door of Tyler's apartment and taped to the windshields of Tyler's cars were insufficient under Arizona Rule of Civil Procedure 4.1(d)(2) because they were not left with a person of suitable age and discretion. Regarding the second service attempt, there's no indication that the receptionist was authorized to receive service on Tyler's behalf. Arizona courts have held that simply leaving a complaint and summons with a receptionist at a defendant's place of work is insufficient under Arizona Rule of Civil Procedure 4.1(d). *Iknadosian v. Mahon*, 2014 WL 2548975, *3 (Ariz. Ct. App. 2014) ("[D]elivery to a receptionist at a defendant's place of employment is insufficient service.").

Alpha also hasn't complied with Arizona Rule of Civil Procedure 4.1(k), which governs alternative means of service. The Court's earlier order denied Alpha permission to serve by publication and didn't "order that service be accomplished in another manner." *Id.* Also, even if the earlier order could be read as authorizing alternative service via delivery to the receptionist at Tyler's place of business (Doc. 15 at 5), Alpha has failed to establish that Tyler still worked at the office building at the time the process server delivered the envelope to the receptionist. Accordingly, Alpha is not entitled to default judgment against Tyler because he has not been properly served.

Under Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or

order that service be made within a specified time." Here, the SAC was filed more than 90 days ago and the deadline for serving Tyler—which has already been extended once, at Alpha's request—has expired. Additionally, Alpha was previously given an "express warning that the Court will dismiss this action, without further notice to Plaintiff(s), with respect to any Defendant that is not timely served." (Doc. 9 at 2.) Although the Court could grant another extension (which Alpha has not requested), it appears such a step would be futile. Accordingly, Tyler will be dismissed without prejudice.

II.   Default Judgment As To Freedom Movers And Vaughn

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

A.   **The First, Fifth, Sixth, and Seventh *Eitel* Factors**

"In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020).

The first factor weighs in favor of default judgment. If Alpha's motion for default judgment were denied, it would be without other recourse. *See, e.g.*, *Stillwater Ins. Co. v. Fricker*, 2018 WL 2985255, *1 (D. Ariz. 2018) (first factor weighed in favor of default

judgment in declaratory judgment action where insurer sought determination of no coverage); *Mesa Underwriters Specialty Ins. Co. v. Paradise Skate, Inc.*, 2016 WL 9045622, *3 (N.D. Cal. 2016) ("There is potential prejudice where denying default judgment would deny an insurer a judicial determination as to whether it has a duty to indemnify and defend the defendant and whether it is entitled to reimbursement of the defense costs in the underlying action. Moreover, an insurer's continued exposure to liability in an underlying lawsuit amounts to potential prejudice that weighs in favor of default judgment.") (citations omitted).

The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to Freedom Movers' and Vaughn's failure to participate, there is no dispute over material facts and no indication that default is due to excusable neglect.

The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." 2 Gensler, Federal Rules of Civil Procedure Rules and Commentary, Rule 55, at 119-20 (2020).

B.     **The Fourth *Eitel* Factor—The Amount Of Money At Stake**

"Where the plaintiff's claim is for declaratory relief rather than for money damages, some courts have found that this factor weighs in favor of granting default judgment," but "[w]here the declaratory relief sought implicates the parties and merits of a separate action, . . . courts have considered the amount at stake in that separate action while weighing the *Eitel* factors." *Stillwater Insurance*, 2018 WL 2985255 at *2.

Here, although Alpha is not seeking an award of damages against Freedom Movers

- 6 -

1 and Vaughn, the declaratory relief it is seeking is still valuable—it certified in the SAC that
2 diversity jurisdiction exists because the amount in controversy exceeds $75,000. (Doc. 10
3 ¶ 9.) $75,000 is a substantial sum, so the fourth factor weighs against granting default
4 judgment. *Echelon Prop. & Cas. Ins. Co. v. Allstate Med Trans LLC*, 2020 WL 3192432,
5 *3 (D. Ariz. 2020) (same).

### C. The Second And Third *Eitel* Factors—Merits and Sufficiency

Finally, the Court turns to the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id*.

Here, both factors weigh in favor of granting default judgment. Taken as true, the factual allegations in the SAC establish that Freedom Movers' frequent trips outside of the mileage radius rendered Alpha's coverage null, void, and of no effect.[1] (Doc. 10 ¶¶ 32, 33, 46, 49.) Indeed, the accident giving rise to the underlying lawsuit occurred in Illinois, well outside the mileage radius. (*Id*. ¶ 13.) Thus, Alpha is entitled to a determination of no coverage. *Stillwater Insurance*, 2018 WL 2985255 *2 (second and third *Eitel* factors favored default judgment in insurer's declaratory relief action because complaint established that underlying lawsuit fell within policy's exclusions).

### D. Balancing The Factors

Having considered all of the *Eitel* factors, the Court concludes that default judgment against Freedom Movers and Vaughn is appropriate.

---

[1] The other arguments Alpha presents are more dubious. Although Alpha points out that the exclusions of coverage include "[b]odily injury to an employee of an insured," there's no indication that Sawdon was an employee of Freedom Movers. (Doc. 10 ¶ 30.) It's also not clear why or how Freedom Movers was acting "outside of the industry and line of work for which Alpha agreed to insure." (*Id*. ¶ 45.) Finally, Alpha doesn't adequately plead that the failure by Defendants to "cooperate" in the lawsuit results in a determination of no coverage—the policy states that cooperation in a lawsuit is a "duty," but the SAC doesn't allege facts or provide policy language to support the conclusion that the consequence of a failure to abide by this duty results in no coverage. (*Id*. ¶ 53.)

### E. **Attorney Fees And Costs**

Finally, Alpha requests attorney fees and costs. The motion for default judgment doesn't indicate the legal basis for this request. It's true that A.R.S. § 12-341.01(A) provides in relevant part that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Alpha is the successful party, and this lawsuit plainly arises out of a contract. *See, e.g.*, *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Aero Jet Servs., LLC*, 2012 WL 510490, *1-4 (D. Ariz. 2012) (canvassing Arizona law before concluding that a "successful party in an insurance declaratory relief action" may seek fees under A.R.S. § 12-341.01(A)); *John Deere Ins. Co. v. W. Am. Ins. Grp.*, 854 P.2d 1201, 1204-05 (Ariz. Ct. App. 1993) (awarding fees under A.R.S. § 12-341.01 to insurer who initiated and prevailed in declaratory relief action).

However, A.R.S. § 12-341.01(A) does not *compel* an award of attorneys' fees to the prevailing party in every contract action. "The legislature used the phrase 'may award' . . . . The natural import of this phrase is to vest discretion in the trial court to determine the circumstances appropriate for the award of fees." *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). The factors Arizona courts have identified as "useful" in determining whether to award fees pursuant to A.R.S. § 12-341.01(A) include (1) the merits of the claim or defense of the unsuccessful party; (2) whether the litigation could have been avoided or settled; (3) whether assessing fees would cause extreme hardship; (4) whether the successful party prevailed with respect to all relief sought; (5) whether the legal question was novel or had been previously adjudicated; and (6) whether an award would discourage other parties with tenable claims or defenses from litigating them." *Id*.

Here, Alpha did not provide any briefing or evidence concerning these factors or even indicate that § 12-341.01(A) was the law entitling it to attorneys' fees and costs. Instead, it simply submitted an itemization of its fees and rates (Doc. 22-1 at 7-18) and an attorney declaration averring that the "services performed . . . were necessary and the amounts billed for those services were reasonable." (*Id*. at 4 ¶ 21). Even assuming that

Alpha intended to seek attorney fees under A.R.S. § 12-341.01(A), the information it provided fails to fully address the factors listed above. Accordingly, the request for attorney fees and costs will be denied.

Accordingly, **IT IS ORDERED** that Alpha's motion for default judgment (Doc. 22) is **granted in part and denied in part**. Tyler is dismissed without prejudice. A separate judgment against Freedom Movers and Vaughn will issue, after which the Clerk of Court shall terminate this action.

Dated this 29th day of July, 2020.

Dominic W. Lanza
United States District Judge